NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LEIGH KOHLHAAS,

        Plaintiff,

v.

STATE OF NEW JERSEY, STATE
POLICE DETECTIVE JOSEPH F.
SEMBLER, DEPUTY ATTORNEY
GENERAL MARIE MCGOVERN, and
DEPUTY ATTORNEY GENERAL "JOHN
DOE,"

        Defendants.

Civ. No. 16-1564

**OPINION**

RECEIVED

OCT 2 3 2017

AT 8:30_____M
WILLIAM T. WALSH
CLERK

THOMPSON, U.S.D.J.

This matter comes before the Court upon Defendants' Motion for Summary Judgment. (ECF No. 38.) Plaintiff Leigh Kohlhaas ("Plaintiff") opposes. (ECF No. 42.) The Court has decided the Motion based upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

## BACKGROUND

This case arises out of Plaintiff's wrongful arrest claim tied to a criminal conspiracy investigation, brought against Defendants Police Detective Detective Joseph Sembler ("Defendant Sembler"), Deputy Attorney General Marie McGovern ("Defendant McGovern"),

and Former Deputy Attorney General Kenneth Sharpe ("Defendant Sharpe"), (collectively "Defendants").

The undisputed facts are as follows. On May 7, 2014 Plaintiff was arrested at JFK Airport pursuant to an arrest warrant obtained by Defendants on April 30, 2014. (Defs.' Statement of Material Facts [hereinafter Defs.' SMF] ¶¶ 28–29, 31, ECF No. 38-2.) This arrest warrant provided one statement with respect to Plaintiff: "I have identified Leigh Kohlhaas's telephone number used in text message communication with Lewis Ageyman regarding fraudulent credit card orders." (*Id.* ¶ 30.)

The warrant was part of an extensive online credit card theft investigation, Operation Parcel Post, overseen by Detective Sembler. (*Id.* ¶¶ 1–3.) Operation Parcel Post suspects were illegally obtaining credit card information and making fraudulent online purchases. (*Id.* ¶¶ 6–7.) The investigation led Defendant Sembler to Plaintiff by way of the search and arrest of a suspect named Lewis Ageyman ("Ageyman"), who was linked to the fraudulent purchases through subpoenas of the websites on which the purchases were made. (*Id.* ¶¶ 8–11.) Defendants verified Ageyman's connection with Operation Parcel Post. (*Id.* ¶¶ 14–15.) An assessment of Ageyman's phone produced two forensic reports—the Cellebrite report and Katana Latern 3 report. (*Id.* ¶ 16; Defs.' Resp. to Pl.'s Suppl. Statement of Material Facts [hereinafter Defs.' Resp. to Pl.'s SSMF] ¶ 21, ECF No. 49.) Relying on the Katana Lantern 3 report, Defendants found communications regarding the fraud with a particular number ("the 0402 number"). (Defs.' SMF ¶ 17.) Defendants subpoenaed Verizon and Cellco records of subscriber information for the 0402 number from May 1, 2013 to June 1, 2013. (*Id.* ¶¶ 18–19, 21.) According to the subpoena, this number belonged to J.Crew, Inc. since February 2013. (*Id.* ¶¶ 24, 26.) Defendants learned, through a further subpoena of and discussions with J.Crew, that

2

Plaintiff held the 0402 number via company iPad since May 2013. (*Id.* ¶¶ 23–25.) Defendant McGovern helped Defendant Sembler prepare the subpoena to J.Crew. (*Id.* ¶ 80.) Defendant Sembler then prepared the affidavit for the arrest warrant pursuant to this information, which both Defendants McGovern and Sharpe reviewed and approved. (*Id.* ¶ 29.) The warrant was signed by a Superior Court Judge on April 30, 2014; Plaintiff was then arrested at the airport, held in Ocean County jail, and released on May 12, 2014 (*Id.* ¶¶ 31–32, 36–37.)

Also stemming from the information on Ageyman's phone, Defendants arrested Eiven Jordan on May 27, 2014. (*Id.* ¶¶ 39–40.) Defendants searched Eiven Jordan's phones and discovered that one of his devices was using the 0402 number to send messages via iMessage over WiFi networks, even though he had surrendered the number when his Verizon contract ended. (*Id.* ¶¶ 41, 45.) In August 2014, Defendant Sembler prepared a search warrant, approved by Defendant Sharpe, to obtain Plaintiff's iPad from J.Crew. (*Id.* ¶¶ 50–51, 53.) After the iPad was obtained in August, Defendants could not access it due to password protection, and did not unlock the iPad until October 22, 2014. (*Id.* ¶¶ 54, 56, 64.) When Defendants gained access they did not find any of the incriminating text messages to Ageyman, even though the iPad utilized the 0402 number. (*Id.* ¶¶ 65–66.) Subsequently, the charges against Plaintiff were dropped in early November 2014. (*Id.* ¶ 67.)

On February 1, 2016, Plaintiff filed the present litigation in the New Jersey Superior Court, Law Division, Ocean County against the State of New Jersey, Detective Joseph Sembler, and Deputy Attorney General Marie McGovern. (*See* Defs.' Notice Removal, Ex. 1, ECF No. 1-1.) On March 21, 2016 Defendants collectively filed notice of removal in this Court pursuant to 28 U.S.C § 1441(b), (c), and § 1443. (Defs.' Notice of Removal ¶ 4, ECF No. 1.) Defendant State of New Jersey was dismissed as a party on May 5, 2016. (ECF No. 7.) Plaintiff served

amended complaints on June 22, 2016 (Am. Compl., ECF No. 10) and again on March 22, 2017 against Defendants Detective Joseph Sembler, Deputy Attorney General Marie McGovern, and Former Deputy Attorney General Kenneth Sharpe (Second Am. Compl., ECF No. 24-1). Plaintiff pled causes of action based on: (I) violations of 42 U.S.C. § 1983, (II) failure to intervene, and (III) malicious prosecution. (*Id.*) The parties engaged in discovery, and on August 18, 2017, Defendants moved for summary judgment. (ECF No. 38.) Plaintiff opposed and Defendants replied. (ECF Nos. 42, 48.) This Motion is presently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of

4

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

### I. Defendants' Due Process Argument

Defendants first argue that the Fourth Amendment, not the Fourteenth, is the appropriate vehicle for Plaintiff's claims, and therefore, his due process claim must be dismissed. (Defs.' Mot. Summ. J. at 3, ECF No. 38-1.) Plaintiff does not address this argument in his opposition.

"The Supreme Court has held that when government behavior is governed by specific constitutional amendment, due process analysis is inappropriate." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Plaintiff pleads violations of the Fourteenth Amendment and his due process rights within the damages and § 1983 cause of action sections of his Complaint. (Second Am. Compl. ¶¶ 32, 35.) The facts of this case are most appropriately described as a violation of the Fourth Amendment through unlawful seizure and arrest without probable cause and malicious prosecution. (Pl.'s Opp'n to Defs.' Mot. Summ. J. at 3, ECF No. 42); *see Manuel v. City of Joliet*, 127 S. Ct. 911, 919 (2017). Therefore, because Plaintiff's "due process claim is predicated on damages resulting from an unconstitutional seizure'. . . the claim is properly considered as an alleged violation of the Fourth Amendment, and 'due process is inappropriate.'" *McRae v. City of Nutley*, 2015 WL 6524629, at *4 (D.N.J. Oct. 28, 2015) (citing *Washington v. Hanshaw*, 552 F. App'x 169, 173 (3d Cir. 2014); *Berg*, 219 F.3d at 268).

### II. Defendants' Absolute Immunity Argument

Defendants McGovern and Sharpe argue that they are entitled to absolute immunity for their conduct related to the arrest warrant and strategic decisions made with respect to Plaintiff's prosecution. (Defs.' Mot. Summ. J. at 6–10.) The Third Circuit assigns the "heavy burden" of

establishing absolute immunity to the prosecutor. *Light v. Haws*, 472 F.3d 74, 80–81 (3d Cir. 2007). Absolute immunity is recognized "quite sparing[ly]" in the realm of § 1983 liability. *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008)

Prosecutors enjoy absolute immunity from § 1983 claims stemming from actions "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), or "performed in a judicial or quasi-judicial capacity," *Odd*, 538 F.3d at 208. Actions "in an investigative or administrative capacity," however, receive qualified immunity. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (citing *Imbler*, 424 U.S. at 430; *Burns v. Reed*, 500 U.S. 478 (1991)). The Third Circuit rejects a bright-line rule relying on the timing or location of the prosecutor's conduct. *Odd*, 538 F.3d at 210. Rather, the key question is whether the prosecutor "was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. Cty. of Del.*, 465 F.3d 129, 136 (3d Cir. 2006) (internal citation omitted). In such situations, "supervisory prosecutors are equally entitled to absolute immunity as those prosecutors conducting the proceedings." *Burke v. Monmouth Cty. Prosecutor's Office*, 2011 WL 1485470, at *4 (D.N.J. Apr. 19, 2011) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 861–64 (2009)).

A. <u>Absolute Immunity for Conduct Related to the Arrest Warrant</u>

In support of immunity, Defendants rely predominately on *Kalina v. Fletcher*, 522 U.S. 118 (1997), for the assertion that their conduct in preparing and submitting the arrest warrant is protected by absolute immunity. In *Kalina* the prosecutor received absolute immunity for drafting a certification and filing three charging documents simultaneously, including a motion for arrest warrant and an information charging the respondent with burglary. 522 U.S. at 121 (citing *Malley v. Briggs*, 475 U.S. 335 (1986) (prosecutor enjoyed absolute immunity for filing

an indictment)). The Third Circuit has embraced the *Kalina* holding for the proposition that prosecutors enjoy absolute immunity when deciding whether to initiate prosecution because the "arrest of a criminal defendant and the filing of charges are at the core of the prosecutorial function." *Munchinski v. Solomon*, 618 F. App'x 150, 154 (3d Cir. 2015); *LeBlanc v. Stedman*, 483 F. App'x 666, 669 (3d Cir. 2012) (dismissing on absolute immunity grounds when plaintiff's claims alleged that the district attorneys failed to verify evidence on which charges against him were brought); *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009) (extending prosecutorial immunity to defendants who charged and indicted plaintiff).

Defendants McGovern and Sharpe are immune for the filing of this "complaint-warrant" that authorized the arrest of Plaintiff for a number of state crimes. (Defs.' Mot. Summ. J., Ex. A, ECF No. 38-4.) The Court notes that Operation Parcel Post was an ongoing and extensive investigation where over twenty individuals were arrested (Defs.' SMF ¶¶ 1–4), and no criminal proceedings against Plaintiff commenced upon his arrest. (*Id.* ¶¶ 37, 50–57.) The act of submitting this type of criminal complaint for arrest, however, is squarely within the prosecutorial functions that receive immunity within this Circuit. *See Munchinski*, 618 F. App'x at 154. It is undisputed that Defendant McGovern reviewed the affidavit for Plaintiff's arrest warrant, making an initial determination of legal sufficiency and probable cause, and that Defendant Sharpe later approved this document. (Defs.' SMF ¶¶ 29, 81–83.) Such determinations of probable cause in this context are also prosecutorial functions. *Kalina*, 522 U.S. at 130.

Absolute immunity is also appropriate here for Defendant Sharpe because he was in direct supervision of Defendants McGovern and Sembler. It is undisputed that his conduct related to the warrant was a supervisory function. (Defs.' SMF ¶¶ 76–78.) Like in *Van de*

7

*Kamp*, Defendant McGovern's review and approval of Defendant Sembler's arrest warrant and charging documents was "directly connected with the prosecutor's basic trial advocacy duties." 555 U.S. at 346. Therefore, Defendant Sharpe receives immunity for his supervision of these prosecutorial functions. The Court finds that Defendants Sharpe and McGovern are absolutely immune from all of Plaintiff's claims.

### B. Absolute Immunity for Strategic Decisions

Defendants also argue that their strategic decisions to withhold evidence post-arrest or to not negotiate with Plaintiff's lawyer, are entitled to absolute immunity. (Defs.' Mot. Summ. J. at 9–10.) Plaintiff's amended complaint does not reference this particular conduct, only alluding to the fact that he had to prove his innocence over a six month period from his arrest to when charges were dropped. (Second Am. Compl. ¶ 26.) The Court construes this argument to be in reference to Plaintiff's malicious prosecution claim for the continuation of charges against Plaintiff.

Traditionally, prosecutors enjoy absolute immunity at common law for malicious prosecution claims. *Imbler*, 424 U.S. at 441; *Odd*, 538 F.3d at 216. While Plaintiff has not pled the facts Defendants allege, he concedes to their truth in his response to Defendants' statement of material facts and by failing to address them in his pleadings or supplemental statement of facts. (Defs.' SMF ¶¶ 90–95; Pl.'s Resp. to Defs.' SMF ¶¶ 90–95, ECF No. 45.) Thus, there is no dispute of material facts on these issues. Defendants' conduct, though tied to the Operation Parcel Post investigation, is born out of Defendants' role as advocates of the state. The Court finds that Defendants McGovern and Sharpe are entitled to absolute immunity on Plaintiff's malicious prosecution claim.

8

## III. Qualified Immunity for Defendant Sembler

Defendants also argue that Defendant Sembler is entitled to qualified immunity because he did not violate the Fourth Amendment in securing Plaintiff's arrest warrant. (Defs.' Mot. Summ. J. at 11.) When engaged in discretionary functions, "qualified immunity shields government officials from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Taking a two-pronged approach, a court must determine what right was violated and whether the right specifically defined was clearly established such that "every reasonable official would have understood that, despite the issuance of an arrest warrant, there was no probable cause." *Fiore v. City of Bethlehem*, 510 F. App'x 215, 222 (3d Cir. 2013) (citing *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016). If both of these criteria are met, the next question is "whether the facts on the record are such that a jury could conclude that the right was violated." *Wilson v. Russo*, 212 F.3d 781, 782 (3d Cir. 2000).

### A. Violation of a Clearly Established Constitutional Right

Plaintiff has pled violations, among others, of his Fourth Amendment freedom from arrest without probable cause. (Second Am. Compl. ¶ 35; Pl.'s Opp'n to Defs.' Mot. Summ. J. at 8.) The alleged conduct—Plaintiff's arrest at JFK Airport pursuant to an arrest warrant based on the use of his telephone number in text messages, subjecting Plaintiff to unlawful detention and false imprisonment (Defs.' SMF ¶¶ 30–32)—suggests a violation of Plaintiff's Fourth Amendment right not to be unreasonably seized, satisfying the first step. *See Groman v. Twp. of*

*Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures."); *see also Schneyder v. Smith*, 653 F.3d 313, 321–22 (3d Cir. 2011). Plaintiff also alleges failure to intervene and malicious prosecution, which are predicated on the alleged violations of his Fourth Amendment right to be free from unreasonable seizure. *See Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir. 1998) (finding a malicious prosecution § 1983 claim may be brought for any constitutional violation, and when based on the Fourth Amendment, plaintiff must demonstrate deprivation of liberty).

Turning to the second step, the Court must construe this right "in the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded by Pearson v. Callahan*, 553 U.S. 223, 236 (2009)). Defendants present the right at issue as one of first impression related to the use of a single telephone number by two individuals. (Defs.' Mot. Summ. J. at 21.) They claim that there is no case law providing Defendants with notice that "relying merely upon the information provided [by] Verizon and J.Crew to identify a co-conspirator violated [Plaintiff's] rights under the Fourth Amendment." (Defs.' Reply to Pl.'s Opp'n at 9, ECF No. 48.) Plaintiff pleads a general right beyond dispute: arresting an individual without probable cause violates a clearly established right. *See, e.g., Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). (Defs.' Mot. Summ. J. at 12 ("A finding of probable cause is a complete defense to all of these claims.").) Framed more specifically, Plaintiff argues that "the warrant application 'is so lacking in indicia of probable cause as to render official belief in its existence [entirely] unreasonable." (Pl.'s Opp'n to Defs.' Mot. Summ. J. at 9 (citing *United States v. Leon*, 475 US 335, 341 (1986) (alteration to reflect original quote in *Leon*).)

This case does not raise a novel standard or right as Defendants contend, but rather a novel application of an existing right. Relying on the *Leon* standard, there is strong federal case law, including within this Circuit, that the single sentence in the warrant here may have been "the sort of skeletal affidavit that is too weak to support the shield of qualified immunity." *Fiore*, 510 F. App'x at 221 (citing *United States v. Pavulak*, 700 F.3d 651, 664 (3d Cir. 2012) (collecting cases of "bare bones" affidavits)); *see also Messerschmidt v. Millender*, 565 U.S. 353, 547 (2012); *Trainer v. Anderson*, 663 F. App'x 241, 243 (3d Cir. 2016) (finding arrest warrant not bare bones when based on identification of plaintiff, victim's description, and vehicle association). Although Defendants took various investigative steps and served multiple subpoenas leading them to this single sentence, on its face, the affidavit is problematic.

Modern technology creates the ability to communicate through many applications on multiple devices over WiFi networks—all with one corresponding phone number. In light of these changes, a telephone number is not necessarily a unique personal identifier or a guarantee of one individual's identity. Given the unique facts of this case, the application of qualified immunity at this threshold question does not serve Plaintiff's public interest in recovering damages for the potential and alleged violation of his rights. *Orsatti*, 71 F.3d at 483.

B. Probable Cause for Plaintiff's Arrest Warrant

With the initial two-step inquiry satisfied, the Court next turns to whether the right at issue was violated: whether Defendant Sembler's arrest warrant was supported by probable cause. "When law enforcement officers 'reasonably but mistakenly conclude that probable cause to make an arrest is present,' qualified immunity forecloses second-guessing of their determination by civil courts." *Peterson v. Bernardi*, 719 F. Supp. 2d 419, 429 (D.N.J. 2010) (quoting *Orsatti*, F.3d at 483). In order to succeed in a § 1983 action, the plaintiff must prove:

"(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson*, 212 F.3d at 787–87 (internal citations omitted).

1. *Omissions and False Statements*

Omissions are "facts known or suppressed," *Boyd v. Hudson Cty. Prosecutor's Office*, 2014 WL 47772, at *8 (D.N.J. Jan. 6, 2014), and are made with reckless disregard when a reasonable person would know that a judge would find such facts to be important in determining probable cause, *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010). Defendants claim that the singular statement and fact put forth on behalf of the arrest warrant was true and there were no relevant omissions. (Defs.' Mot. Summ. J. at 13–14.) Plaintiff, however, claims that the affidavit mischaracterized the facts because it was not Plaintiff's telephone number that was communicating, and even so Defendants omitted relevant facts that negate finding probable cause on the basis of the 0402 number alone. (Pl.'s Opp'n to Defs.' Mot. Summ. J. at 11–13.)

> Plaintiff points to four specific facts that he alleges to be omissions:
>
> (1) [T]hat the incriminating conversations began before Leigh Kohlhaas was assigned the relevant number and therefore could not have been made by him . . . (2) that the co-conspirator in question was identified as "E" . . . (3) that the substance of the communications, in addition to indicating involvement in the conspiracy, detail other substantive facts tending to identify the true conspirator that the Defendants ignored rather than investigated . . . and (4) that all of the communications with "E" in January through May of 2013 were made only over internet-based Applications and not through any cellular network.

(Pl.'s Opp'n to Defs.' Mot. Summ. J at 12–13 (internal citations omitted).)

First, it is undisputed that the 0402 number was assigned to Plaintiff by J.Crew beginning in May 2013 (Defs.' SMF ¶¶ 23–24), and that incriminating text messages were sent between May and June 2013, while Plaintiff was in possession of the number (*id.* ¶ 20; Pl.'s Resp. to

12

Defs.' SMF ¶ 20 (disputed by Plaintiff only insofar as this period does not represent the full scope of incriminating messages)). It is further undisputed that incriminating conversations took place as early as January 28, 2013 between the 0402 number and Ageyman. (Pl.'s SSMF ¶ 21, ECF No. 45; Defs.' Resp. to Pl.'s SSMF ¶ 21.) The parties, however, expressly dispute whether Defendants had knowledge of the incriminating text messages sent prior to May 2013. (Defs.' Reply to Pl.'s Opp'n at 3–4.) *Cf. Dempsey v. Bucknell Univ.*, 834 F.3d 457, 471 (3d Cir. 2016) ("[T]he officer must have knowledge of the information alleged to have been recklessly omitted."). Defendants claim that while they had forensic reports of Ageyman's phone showing text conversations with the 0402 number prior to May 2013, they did not read the entirety of those reports to have actual knowledge. (Defs.' Reply to Pl.'s Opp'n at 3.) It is not for the Court to expect perfect investigatory tactics upon review of a probable cause determination, *Boyd*, 2014 WL 47772, at *8 (finding no reckless omissions when officers' affidavit tracked the facts stipulated to in the lawsuit and did not hide exculpatory fact that a cellphone was registered to a different user), nor to "demand that officers relate the entire history of events leading up to a warrant application." *Wilson*, 212 F.3d at 787. Nonetheless, this information was within Defendant Sembler's arsenal of evidence, and the existence and content of these messages is relevant to whether it was reasonable to believe that the individual sending the messages was Plaintiff.

Next, it is undisputed that Defendant Sembler knew that the person with the 0402 number was referred to as "E" in Ageyman's phone. (Defs.' Resp. to Pl.'s SSMF ¶ 16.) It is further undisputed that Defendant Sembler made no follow-up investigations to ascertain or corroborate the identity of the co-conspirators from Ageyman's texts. (*Id.* ¶ 19.) Defendants contend that any alleged omissions were not made intentionally or with reckless disregard for the truth

because Defendant Sembler had no reason to doubt the accuracy of the information obtained via subpoena through verified channels—until Eiven Jordan was arrested and found with a device utilizing the same phone number. (Defs.' Mot. Summ. J. at 16–17.) Instead they argue that this information was immaterial. (Defs.' Reply to Pl.'s Opp'n at 4–5.) On the contrary, the information Plaintiff points to may "have altered the outcome of the magistrate judge's probable cause determination." *Shaffer v. City of Pittsburgh*, 650 F. App'x 11, 115 (3d Cir. 2016). Although the contact label used by criminals is not necessarily reliable—as Defendants contend—considering these facts in totality and construing them in Plaintiff's favor, the Court finds it to be relevant to the determination of probable cause.

Finally, it is undisputed that the messages to Ageyman were sent via iMessage over WiFi, not via SMS over cellular networks. (*See* Defs.' SMF ¶ 45; Pl.'s Opp'n to Defs.'s Mot. Summ. J at 11–12.) Defendants received two forensic analysis reports from Ageyman's phone, the Cellebrite Report and Katana Latern 3 report. (Defs.' Resp. to Pl.'s SSMF ¶ 16.) The Cellebrite report identified messages based on the messaging application used to send them. (Lynch Decl., Ex. D at 121–22.) Defendant Sembler did not use the Cellbrite report in drafting the affidavit (*id.* at 204), and therefore did not know of this difference based on the Katana Lantern 3 report that he used (Defs.' SMF ¶ 46). Notably, in Defendants' reply brief for this Motion, they describe this particular fact as information "that may have been within the[ir] actual knowledge." (Defs.' Reply to Pl.'s Opp'n at 4.) Like the text communications dating back to January 2013, this information was certainly available to Defendant Sembler in the forensic reports. Again, it is unclear whether it was within his actual knowledge. The Court does agree with Defendants that, at first blush, the difference between an iMessage and SMS may have seemed of little value. Yet technological advancements in the use of messaging applications over WiFi networks and

multiple devices to communicate—not just cellphones on cellular networks—renders this distinction a material fact. *See supra* Section III.A.

On balance, Defendant Sembler was not free to exclude this potentially exculpatory evidence, even if the evidence of the telephone number put forth itself suggested probable cause. *See Andrews v. Scuilli*, 853 F.3d 690, 699 (3d Cir. 2017). Construing the facts presented in a light most favorable to Plaintiff, the Court finds that the facts regarding communications prior to April 2013, the label of the 0402 number in Ageyman's phone, and the type of message are material omissions.

### 2. *Materiality and Reconstruction*

As to the materiality element, the Court must reconstruct the affidavit by including any omissions and correcting any inaccuracies and then determine whether that affidavit would have established probable cause.[1] *Vance v. State of N.J. Div. of Labor & Pub. Safety*, 2017 WL 3895553, at *6 (D.N.J. Sept. 5, 2017); *see also Andrews*, 853 F.3d at 700. To award summary judgment in Defendants' favor the court "must conclude 'that no reasonable jury could find facts that would lead to the conclusion' that the reconstructed affidavit lacked probable cause.'" *Andrews*, 853 F.3d at 700 (citing *Wilson*, 212 F.3d at 792).

Defendants put forth one fact in their affidavit related to Plaintiff: "I have identified Leigh Kohlhaas's telephone number used in text message communications with Lewis Ageyman regarding fraudulent credit card orders." (Defs.' SMF ¶ 30.) With the omissions discussed above noted in brackets, this should read,

---

[1] "While the question of probable cause is generally left to the jury, a court may conclude that probable cause exists as a matter of law, 'if the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding.'" *Goodwin*, 836 F.3d at 327 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (alterations in original)).

15

> I have identified Leigh Kohlhaas's telephone number used in text message communications [via iMessage] with Lewis Ageyman regarding fraudulent credit card orders. [This number was assigned to Leigh Kohlhaas by his employer J.Crew, Inc. in May 2013, but text message communications with Lewis Ageyman dated back to January 28, 2013. The contact with this number in Lewis Ageyman's phone is labeled "E".]

Based on this reconstruction, Defendants' alleged omissions could "prevent a fact-finder from concluding that the reconstructed affidavit still established probable cause." *Andrews*, 853 F.3d at 703. In other words these omissions are material because a fact-finder may find that the omitted evidence, in contrast to the link of the 0402 number alone, negated probable cause to arrest Plaintiff. In the context of the qualified immunity analysis at large, this demonstrates that a fact-finder may find that Defendant Sembler made material omissions, thereby violating Plaintiff's Fourth Amendment right. *See Wilson*, 212 F.3d at 787–87. For these reasons, the Court cannot award summary judgment in Defendant Sembler's favor.

## IV.  Failure to Intervene Claim

Finally, Defendants argue that they are entitled to judgment on Plaintiff's failure to intervene claim because they did not violate his constitutional rights. (Defs.' Mot. Summ. J. at 18–19.) Because the Court has already found that Defendants McGovern and Sharpe are entitled to absolute immune, they are immune from Plaintiff's failure to intervene claim. *See supra* Section II. The following discussion only applies to Defendant Sembler.

A failure to intervene claim under the Fourth Amendment requires the plaintiff to prove: "(1) that the officer had a duty to intervene, (2) that the officer had a reasonable opportunity to intervene, and (3) that the officer failed to intervene." *Hayward v. Salem City Bd. of Edu.*, 2016 WL 4744132 (D.N.J. Sept. 12, 2016) (citing *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002)). Defendants correctly noted that, absent demonstration of a constitutional violation of a

plaintiff's rights, a failure to intervene claim cannot succeed. *Bryant v. City of Philadelphia*, 518 F. App'x 89, 93 (3d Cir. 2013).

Based on the discussion above, the Court rejects Defendants' argument for immunity from this claim. Contrary to Defendants' assertion, Plaintiff pled sufficient facts to defeat summary judgment on his Fourth Amendment claim, and Defendant Sembler is not granted qualified immunity at the summary judgment stage.

## CONCLUSION

For the reasons stated above, summary judgment will be granted as to Defendants' argument regarding due process and their absolute immunity claims and denied as to Defendants' qualified immunity argument. An accompanying Order will follow.

Date: 10/23/17

ANNE E. THOMPSON, U.S.D.J.